HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MATTHEW BRAUN, individually, and ANN LISA BRAUN, individually, and as Personal Representative of the Estate of MAXWELL BRAUN,<br><br>Plaintiff,<br><br>v.<br><br>CROWN CRAFTS INFANT PRODUCTS, INC., a Delaware Corporation,<br><br>Defendant. | CASE NO. 3:12-CV-05811 RBL<br><br>ORDER **DENYING** DEFENDANTS MOTION FOR SUMMARY JUDGMENT<br><br>(Dkt. #28) |

## I.     INTRODUCTION

THIS MATTER is before the Court on Defendant Crown Crafts Infant Products' Motion for Summary Judgment. Maxwell Braun died while he was sleeping in a NoJo baby sling manufactured and sold by Crown Crafts. At the time of the incident, his family lived in Virginia, but they were in Connecticut on vacation. Crown Crafts' Motion is based on its claim that the law of either Virginia (where the Plaintiffs resided) or California (where the allegedly defective product was designed) applies to the case, and that under either states' limitations period, the plaintiffs' claims are time-barred.

Plaintiffs argue instead for the application of Connecticut law, and assert that their claims are timely under Connecticut's limitations period. Because Connecticut has the most significant relationship to this action, the law of either Connecticut or the forum state (Washington) applies. Defendant's Motion depends on the application of Virginia or California law, and the Motion is therefore DENIED.

## II.   BACKGROUND

Defendant Crown Crafts is a corporation incorporated in Delaware, with its principle place of business in Compton, California. Crown Crafts is a manufacturer of consumer infant and toddler products. Its products are designed in California, manufactured in China, and marketed and sold through retail stores nationwide. Crown Crafts manufactures the "NoJo – The Original Baby Sling."

Maxwell Braun was born September 29, 2005, in Richmond, Virginia, and he and his parents, were at all relevant times residents of Virginia. Plaintiffs purchased the NoJo from a Babies-R-Us in Richmond. On December 22, 2005, Plaintiffs drove to Connecticut to visit family and friends for the Christmas holiday. They intended to stay with Mrs. Braun's parents (residents of Connecticut) during their trip. (Dkt. #30, p. 4–5.) On December 23, the Brauns visited friends in Norwalk, Connecticut. While at the friend's house, Mrs. Braun put Maxwell in the NoJo, and gave him to her husband. Approximately 10–15 minutes later Mrs. Braun removed Maxwell from the sling and found him unresponsive and not breathing. Maxwell was pronounced dead at 1:50 p.m. at the Norwalk Hospital in Norwalk, Connecticut. The death certificate listed the cause of death as "pending further studies." In a May 2, 2006 letter to the Plaintiffs, the Chief Medical Examiner of the State of Connecticut wrote that the "[r]esults of our

examination of your child indicates that the cause of death is Sudden Infant Death Syndrome (SIDS or 'Crib Death')." (LeBank Decl., Ex. G, Dkt. 33.)

On March 12, 2010, the U.S. Consumer Product Safety Commission ("CPSC") published a news release entitled "Infant Deaths Prompt CPSC Warning About Sling Carriers for Babies." (LeBank Decl., Ex. H, Dkt. 33.) The next day, Mrs. Braun initiated a complaint with the CPSC regarding Maxwell's death. On April 9, 2010, a CPSC investigator began compiling a report during a visit to Plaintiffs' residence and the Babies-R-Us where the Brauns purchased their NoJo. In response to communication from Mrs. Braun asking if he had changed his conclusion about Maxwell's cause of death, the Connecticut Medical Examiner sent a letter dated August 8, 2011 restating their conclusion from the original autopsy. In late 2011, or early 2012, Mrs. Braun learned of a mother whose child had died while in a NoJo sling. After talking with the mother, Mrs. Braun contacted an attorney who set up a meeting with a forensic pathologist. During that meeting on May 17, 2012, the forensic pathologist confirmed for Mr. and Mrs. Braun that their son's death was possibly due to asphyxiation and not SIDS.

Plaintiffs filed suit against Crown Crafts in federal district Court on September 11, 2012 alleging violations of the Washington Products Liability Act. Plaintiffs claim that the NoJo was not reasonably safe in design, did not possess adequate warnings or instructions, and was defective in construction. Plaintiffs also claim that Crown Crafts breached the express or implied warranty under RCW 62A.

Defendant's Motion for Summary Judgment argues that under Washington's conflict of law analysis, the substantive law of either Virginia or California law applies, and the suit is time barred under either state's limitations period for product liability claims. Plaintiffs argue that Connecticut law applies and that the suit is not time barred.

## III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B. Washington Choice of Law Standard**

A federal court, sitting in diversity, must apply "the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Washington rules, when parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis. *Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 100–01 (1994). When the result of the issues is different under the law of the [interested] states, there is a "real" conflict. *Pacific Gamble Robinson Co. v. Lapp*, 95 Wash.2d

341, 344–45 (1980). The situation where laws or interests of the concerned states do not conflict is known as a "false" conflict. *Burnside*, 124 Wash.2d at 101. If a false conflict exists, the presumptive local law is applied. *Rice v. Dow Chem. Co.*, 124 Wash.2d 205, 210 (1994).

The first step in the Washington choice of law analysis is to determine if an actual conflict of law is present between Washington and the other interested states. The parties claim that there is a conflict among Washington's product liability statute of limitations period and the limitations period under California, Connecticut, and Virginia law. However, variations in limitations periods are not subject to conflict of law methodology. *Id*. Instead, under the Uniform Conflict of Laws-Limitations Act adopted in Washington, the Court applies the limitations period of the state whose law governs the substantive issues in the case. See RCW 4.18.020[1]. Therefore, the Court must first determine if there is an actual conflict between the substantive laws of Washington and those of California, Connecticut, and Virginia relative to the Plaintiffs asserted claims.

**C. Actual Conflicts of Law**

    **1. Substantive Differences Exist Between Washington Laws and the Laws of other Interested States**

Because there are three potentially interested states (California, Connecticut, and Virginia), a conflict between the substantive law of Washington and even one interested state would require the Court to move to the next step of the Washington choice of law analysis and

---

[1] RCW 4.18.020 states that:
  (1)  Except as provided by RCW 4.18.040, if a claim is substantively based:
      (a)  Upon the law of one other state, the limitations period of that state applies; or
      (b)  Upon the law of more than one state, the limitations period of one of those states, chosen by the law of conflict of law of this state, applies.
  (2)  The limitation period of this state applies to all other claims.

determine which state has the most significant relationships. Here, there is a significant conflict between the substantive products liability and wrongful death laws of Washington and those of Virginia. Conflict exists between Washington and Virginia laws with regard to (1) recognizing strict liability in tort remedy for products liability actions, (2) allowing contributory negligence as a defense, and (3) the existence of a discovery rule which tolls the statute of limitations period.

**D. Significant Relationships Analysis**

Once an actual conflict of law is established, Washington law applies the familiar Restatement (Second) of Conflict of Laws § 145 "most significant relationship" test to determine which substantive law to apply. Under the Restatement:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principle of § 6 to determine the law applicable to an issue include:

(a) The place where the injury occurred,

(b) The place where the conduct causing the injury occurred,

(c) The domicile, residence, nationality, place of incorporation and place of business of the parties,

(d) and the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflict of Laws § 145 (1971); Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 580 (1976).

Under the significant relationship test, the court must evaluate the contacts both quantitatively and qualitatively, based upon the location of the most significant contacts as they relate to the particular issue at hand. *Martin v. Goodyear Tire & rubber Co.*, 114 Wn. App. 823, 830 (2003). Based on the principles set forth in the Restatement (second) of Conflict of Laws, the court analyzes the contacts with each potentially interested state. These contacts are to be evaluated according to their relative importance, and "[the court's] approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Johnson*, 87 Wn.2d at 581. If the competing contacts are roughly balanced, the court moves to the third step in the analysis, evaluating the public policy and governmental interests of the concerned states. *Id.* at 580.

The relevant contacts in the present case are as follows:

- The decedent passed away in Connecticut while Plaintiffs were visiting family and friends whose permanent residence was in Connecticut
- Plaintiffs and their son were residents of Virginia
- Defendant Crown Crafts is a Delaware corporation with its primary place of business in California.
- Crown Crafts does business and sells the NoJo in all 50 states
- Product design decisions concerning the NoJo are made in California
- Plaintiffs purchased the NoJo in Virginia

Among the competing states, Washington has no significant contacts with the claim.

### 1.   **Place Where the Injury Occurred**

Maxwell Braun died in Connecticut. However, Defendant argues that the place of injury, Connecticut, is not important because the Plaintiffs were merely visiting Connecticut on vacation. If "the place of injury can be said to be fortuitous, this place of injury contact should not play an important role in the selection of the state of the applicable law." *Brewer v. Dodson Aviation*, 447 F.Supp.2d 1166, 1179 (2006) (internal quotations removed); Restatement (Second) of Conflicts of Law § 145 cmt. e (1971). However, plaintiffs' visit to Connecticut was not

fortuitous. They were not simply driving through the state on their way to another location. Plaintiffs' were visiting family and friends and intended to stay in Connecticut for over a week. This contact favors Connecticut because Plaintiffs' visit to the state was more than fortuitous.

### 2. Where the Conduct Causing the Injury Occurred

"In a products liability action, the place where the conduct causing the injury occurred is the place where the defendant designed, manufactured, or was otherwise involved with the product in question." *Brewer*, 447 F.Supp.2d at 1179. (internal quotations omitted); *See Zenaida-Garcia v. Recovery Systems Technology, Inc.*, 128 Wash. App. 256, 263 (2005). Crown Crafts designed its products at their California location. The products are manufactured in China, but shipped to California for distribution to U.S. retail locations. This contact favors California because that is where the product was designed.

### 3. Residence, Place of Incorporation and Place of Business

Defendant Crown Crafts is incorporated in Delaware with its primary place of business in California. Plaintiffs and the deceased were all residents of Virginia at the time of the incident. This contact favors either California, where Defendant has its primary place of business, or Virginia, where Plaintiffs were residents.

### 4. Where the Relationship, If Any, Between the Parties is Centered

Plaintiffs relationship with Defendant began with the purchase of the NoJo in Virginia. However, in a product defect action, at least one Washington court has concluded that the place where the relationship is centered is the same as the place where the conduct causing the injury occurred. See *Id*. (concluding that "the conduct causing the injury, and the place where the relationship is centered, is Washington," where the defendant designed and manufactured the [product]). Defendant designed their products in California and they were manufactured in

China. This contact favors either Virginia or California because the product was purchased in Virginia but designed in California.

### 5. Public Policies and Interests of Concerned States

After evaluating the contacts under each of the factors set forth in Restatement (Second) of Conflict of Laws § 145 the Court concludes that the contacts of California, Connecticut, and Virginia are "evenly balanced." Therefore, the Court must move to the next step in the choice of law analysis to determine which state has the strongest policy interests.

The NoJo was designed in California. Therefore, California becomes the place where the conduct causing the injury occurred. California has an interest in regulating the products designed and shipped from within its borders. It has an interest in deterring tortious conduct and encouraging all manufacturers within California to produce safe products. California's statute of limitations and discovery rule create an interest in both protecting manufacturers from unfair and stale litigation, as well as allowing persons injured by a dangerous or defective product sufficient time to investigate their claim.

The injury occurred in Connecticut. It has a strong interest in protecting individuals who might die or become injured within their state. This interest can be seen through the relatively long three year statute of limitations period and use of the discovery rule. Connecticut provides for a longer period with which to bring a claim for personal injury or death than that of any of the other interested states. Connecticut also has an interest in regulating products that cause injury within its state and in providing an accessible forum for victims who have suffered as a result of a product defect materializing within its borders. *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 639 F.Supp. 385, 391 (E.D. Tex. 1986) (recognizing such an interest for every state where the

foreign-manufactured product causes an injury within its borders), *aff'd in part, rev'd in part on other grounds*, 828 F.2d 278 (5th Cir. 1987).

Virginia is the state of residence of the plaintiffs and the deceased. It has an interest in providing a remedy for its residents to bring a claim. However, the Washington Supreme Court has acknowledged that compensating its residents for personal injuries "is a real interest," but is not "an overriding concern." *Rice*, 124 Wash.2d at 215–16; *see also* Restatement (Second) of Conflict of Laws § 145 cmt. e ("The fact… that one of the parties is domiciled or does business in a given state will usually carry little weight of itself.").

While all three states have substantial interest in their laws governing the claim at issue in this case, Connecticut has the most significant relationship to the occurrence and the parties. Connecticut is the place where the death occurred. In product liability cases, there is a presumption that the law of the place of the injury applies, unless it can be overcome by a greater interest of another state in determining the particular issue. *See Zenaida-Garcia*, 128 Wn. App. At 261–62. In this case, both California and Virginia have an interest in the issue, but neither state's interest is great enough to overcome the presumption for applying the law of the place of injury. Connecticut has a strong interest in providing a forum for those persons injured within its borders. Additionally, it has an interest in deterring manufacturers from providing unsafe products which can cause injury and death to persons within Connecticut. While only marginally more significant than the contacts and interests of California and Virginia, Connecticut does possess the most significant relationship to the issues.

E.  **Application of Proper Statute of Limitations**

Connecticut has the most significant relationship to the occurrence and the parties, and under RCW 4.18.020 the Court will generally apply the limitations period of the state whose

1 substantive law governs. However, neither Defendant nor Plaintiffs have determined that an actual conflict of law exists between Washington and Connecticut. Defendant has pointed to a difference between the availability of punitive damages as a conflict but cites no case law holding that a difference in the availability of punitive damages is sufficient to establish an actual conflict of law. The Court need not determine at this time whether the substantive law of Washington and Connecticut conflict, or which state's law will ultimately apply. Defendant's Motion for Summary Judgment is based only on the claim that the suit is time barred under California or Virginia law. Because neither state has the most significant relationship to the case, however, the law of those states (including their limitations periods) do not apply.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment [Dkt. # 28] is DENIED.

IT IS SO ORDERED.

Dated this 27th day of August, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE